******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

DANNEHY, J., concurring in part and dissenting in part. I agree with the majority that the term "provided" in General Statutes (Rev. to 2019) § 12-63c (a)[1] requires only that a municipal tax assessor make an income and expense form available to owners of income producing real property for completion and does not require proof that the owners actually received the form. Accordingly, I concur in that portion of the majority opinion. I respectfully part ways with the majority, however, insofar as it concludes that the April 2020 mailing by the defendant, the town of Greenwich, to the outdated, but last known address, of Empire State Realty Trust (Empire) provided the nonresident plaintiff, Greenwich Retail, LLC, with adequate notice of the demand for information made by the defendant's assessor and the availability of the required form sufficient to justify the imposition of the $23,000 tax penalty in this case.[2] In my view, under the circumstances of this case, that mailing did not satisfy the notice required by the principle of fundamental fairness. I therefore would reverse the judgment of the Appellate Court.

Section 12-63c (a) plainly requires the assessor to provide the property owner with the income and expense form that must be completed and returned by the statutory deadline. As I explained, I agree with the majority that the term "provided," as used in § 12-63c (a), simply means that the assessor must make the prescribed form available for use by the property owner but does not require proof that the owner actually received it.

---

[1] General Statutes (Rev. to 2019) § 12-63c (a) provides in relevant part: "In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method, as provided in section 12-63b, that the owner of such property annually submit to the assessor not later than the first day of June, on a form provided by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. . . ."

All references in this opinion to § 12-63c are to the 2019 revision of the statute.

[2] Empire is the plaintiff's property manager.

The plaintiff's appeal, however, presents an additional question—whether the defendant employed a method of notice reasonably calculated to apprise the plaintiff of the assessor's demand for information and the availability of the prescribed form.

Section 12-63c (a) confers discretionary authority on an assessor to require owners of property used primarily for purposes of producing rental income to submit income and expense information. The statute does not impose a recurring obligation on such property owners to furnish that information in the absence of an affirmative demand by the assessor. Consequently, a property owner who has not been afforded adequate notice of both that demand and the availability of the form on which the information must be provided cannot reasonably be expected to comply with the statutory submission deadline.[3]

Although § 12-63c does not prescribe the manner in which an assessor must communicate such a demand, I agree with the majority that the statute must be read in the context of the common-law right to fundamental fairness in administrative proceedings. Under the facts of this case, however, I disagree with the majority that mailing the demand and form to Empire's outdated, but last known, address satisfied the notice requirements of fundamental fairness. Consistent with the principle of fundamental fairness is the concept that notice must be reasonably calculated to reach the intended recipient when sent. See, e.g., *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273–74 and n.11, 703 A.2d 101 (1997); see also 1 Restatement (Second), Judgments § 2 (1) (b), p. 34 (1982) (notice is adequate if it "is transmitted in a manner that actually notifies the person being addressed or someone who can adequately represent him,

---

[3]To be clear, this case does not concern the imposition of a penalty for failing to timely pay an annual real estate tax, a recurring obligation of which property owners are ordinarily aware and can anticipate. Rather, it concerns the imposition of a statutory penalty for failing to timely submit information in response to an assessor's discretionary demand—a demand that a property owner cannot necessarily anticipate without notice.

or has a reasonable certainty of resulting in such notice"); cf. *Jones* v. *Flowers*, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) ("[the][c]ourt has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent").

Applying that principle, I cannot conclude that the defendant's April 15, 2020 mailing to Empire's outdated, but last known, address constituted notice reasonably calculated to apprise Empire of the assessor's demand. Neither § 12-63c nor any other provision of law of which I am aware required the plaintiff to maintain a current mailing address with the assessor for purposes of receiving requests under § 12-63c. Nor does the record reflect that the defendant ever requested the nonresident plaintiff to maintain updated contact information for that purpose or otherwise informed the plaintiff that the address on file would be treated as its current address for purposes of satisfying the statutory notice requirement regarding the assessor's demand and the availability of the required form. Cf. General Statutes (Supp. 2020) § 47a-6a (b) (municipalities may require nonresident owner to maintain on file current residential address of nonresident owner). The analysis might well be different if the plaintiff had been obligated, whether by statute, regulation, or notice from the defendant, to keep its mailing address current and had nevertheless failed to do so. In those circumstances, a mailing to Empire's last known address likely would have been reasonably calculated to provide notice. But those are not the facts before us.

Accordingly, in the absence of any statute, ordinance, or other municipal requirement obligating nonresident property owners to keep their mailing addresses current with the assessor, and in the absence of evidence in the record that the defendant reasonably relied on an outdated address under the circumstances, I conclude that the April 15, 2020 mailing not only failed to provide Empire with actual notice but also was not reasonably calculated, under the circumstances, to apprise the nonresident plaintiff of the assessor's demand

for information and the availability of the required form.[4] Cf. *Brzozowski* v. *Singh*, Docket No. 08 C 677, 2008 WL 4890161, *3 (N.D. Ill. November 12, 2008) (notice was reasonably calculated to reach intended recipient when it was mailed to address that plaintiff's wife had provided for him less than one week earlier). Because the April 15, 2020 mailing did not satisfy the notice required by the principle of fundamental fairness, I would reverse the judgment of the Appellate Court.

I respectfully concur in part and dissent in part.

---

[4] This conclusion is reinforced by events following the April 15, 2020 bulk mailing. By August 3, 2020, the assessor had received no responses from 465 property owners—approximately 60.4 percent of the recipients of the April mailing. Moreover, by that date, the defendant was aware, based on Empire's June 29, 2020 email to the assessor informing the assessor of its new mailing address, that the plaintiff's notice had not been sent to the correct address. Such an extraordinary nonresponse rate, coupled with Empire's notification of its correct address, should have alerted the defendant that its chosen method of notification may not have been reaching a significant number of intended recipients and, at a minimum, had not reached the plaintiff. Although § 12-63c requires that the form be provided at least forty-five days before the filing deadline, the defendant did not send the plaintiff the required form after learning that the original mailing had been misdirected. Instead, on August 3, 2020, it mailed only a reminder notice. The plaintiff thereafter submitted the requested information late, and the defendant's assessor treated that late submission as a failure to comply with § 12-63c, imposing the penalty authorized by subsection (d) of the statute.